## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

HAJES RABAIA,

             Petitioner,

     v.

STATE OF NEW JERSEY, et al.,

             Respondents.

HONORABLE JEROME B. SIMANDLE

Civil Action
No. 15-4809 (JBS)

**OPINION**

**APPEARANCES:**

Hajes Rabaia, Pro Se
297216-B
South Woods State Prison
215 Burlington Road South
Bridgeton, NJ 08302

Christopher S. Porrino, Esquire
    Attorney General of New Jersey
Emily R. Anderson, Esquire
    Deputy Attorney General of New Jersey
Division of Criminal Justice, Appellate Bureau
P.O. Box 086
Trenton, New Jersey 08625
    Attorneys for Respondents

**SIMANDLE, District Judge:**

## I. <u>INTRODUCTION</u>

Hajes Rabaia ("Rabaia") has submitted an amended petition ("Fourth Petition") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF 11.) The Attorney General of the State of New Jersey and Willie Bond as Administrator of South Woods State Prison (collectively, "Respondents") oppose the Fourth Petition. (Answer, ECF 17.) For the reasons stated herein, the Fourth

Petition shall be denied and no certificate of appealability
shall issue.

## II. **BACKGROUND**

On July 6, 2007, Petitioner and his seventy-two year old
victim N.D. were at an Atlantic City casino, seated at a three-
card poker table. After N.D. won roughly $10,000, he cashed out
$9,800 and took the remaining $200 in chips. *State v. Rabaia*,
No. A-1470-12T2, 2014 WL 7466553, at *1 (N.J. Super. Ct. App.
Div. Jan. 6, 2015) ("*Rabaia I*"). Shortly thereafter, a casino
security officer observed Petitioner and N.D. "tussling on the
floor" near the restroom. After several other officers arrived
on the scene, Petitioner tried to run from the scene but
tripped. Petitioner was taken away and found in possession of
$10,000 in cash. *Id*.

N.D. said that he did not know Petitioner and had not
placed any bets for him. He stated that when he went to the
restroom, Petitioner entered, grabbed him from behind, took the
money from his pocket, and hit him. N.D. grabbed Petitioner's
shirt to stop him from taking his money. *Id*.

Petitioner told a different story. He said that he had met
N.D. at the poker table and told him that he needed money to
settle a court case. Petitioner stated that he gave N.D. $200 in
chips to play for him. Petitioner said that when N.D. won $4,800
in one hand, he and N.D. began to jump excitedly. Petitioner

could not, however, explain why the security videotapes did not show this. (*Id.*) Petitioner stated that he expected to get half of N.D.'s winnings. They went together to the cashier, and N.D. allegedly told the cashier that $200 of his winnings belonged to Petitioner. Petitioner and N.D. went to the restroom, where they argued about splitting the money. (*Id.*) According to Petitioner, N.D. pushed him against the wall. At that point, the money fell out of N.D.'s pocket. (*Id.*) Petitioner grabbed the money. N.D. started screaming. Petitioner said that he and N.D. agreed that Petitioner would keep the money in his pocket, each would get $200 to play, and they would play until Petitioner had to leave. Petitioner stated that when they left the restroom, there were ten people in the area. Petitioner testified that N.D. got nervous and said that Petitioner beat him and took his money. Petitioner denied hitting or touching N.D. *Id.*

Petitioner was charged with second degree robbery in violation of N.J. Stat. Ann. § 2C::15-1(a)(1). (ECF 17-4.)

After a three-day trial, the jury found Petitioner guilty of second-degree robbery. (ECF 17-27 at 37-38.)

On June 3, 2008, Judge Michael Donio sentenced Petitioner to fifteen years of incarceration, with an eighty-five percent period of parole ineligibility as prescribed by the No Early Release Act, N.J. Stat. Ann. § 2C:43-7.2 ("NERA"). (ECF 17-5; ECF 17-29 at 79-85; ECF 17-15 at 31-37.)

On October 20, 2008, Petitioner filed a notice of appeal of his June 3, 2008 judgment of conviction. (ECF 17-15 at 38.) His public defender filed a supporting brief and appendix dated December 22, 2009, raising three issues of alleged trial court error and one issue of excessive and improper sentence. (ECF 17-6 at 2-3 and 42.)

On February 2, 2011, the Appellate Division of the Superior Court of New Jersey ("Appellate Division") denied Petitioner's direct appeal and affirmed his conviction and sentence. (*State v. Rabaia*, 2011 WL 309172, at *1, *5 (N.J. Super. Ct. App. Div. Feb. 2, 2011) ("*Rabaia II*").)

On September 9, 2011, the New Jersey Supreme Court denied certification. (ECF 17-14.)

Petitioner next submitted a pro se petition for post-conviction relief ("PCR"), dated October 25, 2011. (ECF 17-15 at 54-59.) His petition "alleg[ed] the ineffective assistance of trial counsel ["IAC"] by way of inadequately investigating and preparing for trial, failing to subpoena necessary witnesses and to cross-examine State witnesses during trial, and failing to correct errors in the adult pre-sentence report and/or to argue the presence of and preponderance of appropriate mitigating factors at sentencing." (ECF 17-15 at 62.) According to Vincent James Milita, Esquire, the private counsel who represented

Petitioner in PCR proceedings, Petitioner voluntarily withdrew his pro se petition. (ECF 17-15 at 67.)

On August 13, 2011, Petitioner, then represented by private counsel, filed another PCR petition. (ECF 17-15 at 60-66.) On September 15, 2012, Petitioner's counsel filed a brief in support of PCR (ECF 17-15 at 66-76), alleging five claims of IAC by trial counsel. (ECF 17-15 at 62-64 (counsel failed to (1) "adequately consult and confer" with Petitioner; (2) "meaningfully investigate the facts"; (3) "adequately prepare for trial"; (4) "adequately prosecute Petitioner's motion for a new trial"; and (5) "adequately prepare for the sentencing hearing" (issues (1)–(5) collectively referred to as "PCR Issues")).)

At an October 19, 2012 hearing, Judge Michael A. Donio, J.S.C. denied PCR. (ECF 17-30.)

On November 30, 2012, Petitioner filed a Notice of Appeal of denial of PCR. (ECF 17-15 at 86-87.) Petitioner's public defender filed a supporting brief dated September 11, 2013, raising only the following issue: "the PCR court erred in denying [PCR] without an evidentiary hearing ... [T]he PCR court could not make the factual findings required to reach a legal conclusion as to whether counsel's performance was deficient without an evidentiary hearing." (ECF 17-15 at 2, 14 and 20.)

On January 6, 2015, the Appellate Division affirmed denial of PCR. (ECF 17-17 at 6-7 (the PCR court correctly determined that Petitioner was not denied effective assistance of counsel, and the court did not abuse its discretion in deciding the matter without an evidentiary hearing because "[t]he existing record was sufficient to resolve defendant's claims").)

Petitioner filed an Amended Notice of Petition for Certification, dated January 22, 2015. (ECF 17-18.) His public defender's supporting brief framed the issue presented as whether "the appellate court err[ed] in affirming the denial of [PCR] without an evidentiary hearing." (ECF 17-19 at 10.)

On May 12, 2015, the New Jersey Supreme Court denied certification. (ECF 17-21.)

On June 17, 2015, Petitioner filed a petition for habeas corpus ("First Petition") pursuant to 28 U.S.C. § 2254. (ECF 1 at 9 and 13.) That petition asserted two grounds for relief: (1) IAC for "failing to obtain evidence that would have supported [Petitioner's] version of events [and] fail[ing] to call supporting witnesses"; and (2) "improper[] ... extended term." (*Id*. at 4.)

On July 13, 2015, the Court administratively terminated the case for Petitioner's failure to use the correct form, pay the filing fee, or submit an *in forma pauperis* application. (ECF 2.)

On or about July 24, 2015, Petitioner submitted another §
2254 petition ("Second Petition"), alleging the same two grounds
as the First Petition. (ECF 3 at 6 and 8.)

On August 31, 2015, the Court dismissed the Second Petition
without prejudice, pursuant to Habeas Rules 2 and 4, for failure
to plead Petitioner's claims with particularity. (ECF 4; ECF 5.)
On October 2, 2015, the Court granted Petitioner an extension of
time to file a new § 2254 petition. (ECF 7.)

On October 30, 2015, Petitioner filed another amended
petition ("Third Petition"). (ECF 8.) The Third Petition was not
on the proper form required by Local Civil Rule 81.2. Instead,
the Third Petition included what appeared to be Petitioner's
direct appeal brief as the stated grounds for relief. (ECF 8 at
7-32; ECF 17-6 at 16-41.)

On January 12, 2016, the Court administratively terminated
the case, allowing Petitioner to re-open the case by notifying
the Court of such intent within thirty days. (ECF 9; ECF 10.)

On February 2, 2016, Petitioner filed another amended
petition, the Fourth Petition. (ECF 11.) Similar to the Third
Petition, the Fourth Petition includes what appears to be his
direct appeal brief as the stated grounds for relief. (ECF 11 at
17-42; ECF 17-6 at 16-41.) The Fourth Petition's recitation of
its four grounds (ECF 11 at 17-42) are a mirror image of
Petitioner's direct appeal brief (ECF 17-6 at 16-41) in both its

form and content. Dating his signature on January 31, 2016,
Petitioner certified that the Fourth Petition constitutes his
one, all-inclusive § 2254 petition. (ECF 11 at 16.)

On February 16, 2016, the Clerk of this Court re-opened
Petitioner's case.

On December 23, 2016 (ECF 12), this Court ordered
Respondents to submit an answer to Petitioner's Fourth Petition.
(ECF 12 at 1.)

On April 20, 2017, Respondents filed their response
("Answer"). (ECF 17.)

On June 8, 2017, Petitioner filed a letter regarding
certain factual contentions in the Answer. (ECF 18.)

Having reviewed the submissions of the parties, the Court
now denies the Fourth Petition and denies a Certificate of
Appealability, for the reasons explained below.

**III. STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996
("AEDPA") permits a federal court to entertain a petition for
writ of habeas corpus on behalf of a person in state custody,
pursuant to the judgment of a state court, "only on the ground
that he is in custody in violation of the Constitution or laws
or treaties of the United States." 28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits by a state court, the writ shall not issue unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). "[A] state-court decision is an unreasonable application of clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." *White v. Woodall*, 134 S. Ct. 1697, 1706, *reh'g denied*, 134 S. Ct. 2835 (2014). Habeas courts must presume that state court factual findings are correct unless petitioners rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Federal courts may not grant a writ of habeas corpus under § 2254 unless the petitioner has exhausted the remedies available in the courts of the State or exhaustion is excused under 28 U.S.C. § 2254(b)(1)(B). *See Henderson v. Frank*, 155 F.3d 159, 164 (3d Cir. 1998); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997). The exhaustion doctrine mandates that the claim "must have been 'fairly presented' to the state courts." *Bronshtein v. Horn*, 404 F.3d 700, 725 (3d Cir. 2005) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) ). The doctrine therefore requires a petitioner challenging a New Jersey conviction under § 2254 to have fairly presented each federal ground raised in the petition to all three levels of New Jersey courts — i.e., the Law Division, the Appellate Division, and the New Jersey Supreme Court. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 838 (1999); *Rose v. Lundy*, 455 U.S. 509 (1982).

## IV. <u>ANALYSIS</u>

### A.  **Ground One: The Trial Court Erred In Failing To Charge Simple Assault As A Lesser Offense Of Robbery.**

Petitioner alleges that the trial court erred when it "instructed the jury on theft of movable property as a lesser offense of robbery, but failed to instruct the jury on simple assault ... If no request has been made for such a charge, the judge has a duty to give the lesser offense instructions." (ECF 11 at 17 (referred to as "Jury Charge Claim").)

10

Petitioner raised this claim during his direct appeal, arguing that a charge on assault was required because the evidence "clearly indicated" that he assaulted N.D. and committed a theft that took place only after the assault was complete. (ECF 17-6 at 16-20.)

The Appellate Division disagreed with him, ruling that:

> Where, as here, a defendant did not request a charge on a lesser-included offense, the court is nevertheless required to provide the instruction to the jury if the instruction "is 'clearly indicated' in the record." A court is not, however, obligated to "sift meticulously through the record in search of any combination of facts supporting a lesser-included charge." A charge is required when "the evidence is jumping off the page."
>
> [H]ere ... defendant testified that he never touched [N.D.]. On the other hand, [N.D.] testified that defendant grabbed him from behind, took the money in his pocket and then hit him, causing his glasses to fall to the floor. Thus, the evidence did not "clearly indicate" that defendant's assault was completed before he took [N.D.]'s money.

(*Rabaia II*, 2011 WL 309172, at *2-3) (internal citations omitted). The New Jersey Supreme Court denied certification on September 9, 2011. (ECF 17-14.)

Respondents contend that Ground One should be denied because Petitioner has not met § 2254(d)(1)'s standard of review and because that there is no federal precedent that entitles Petitioner to habeas relief. (ECF 17 at 14-17.)

For the reasons set forth below, the Court agrees with Respondents that Ground One must be denied.

The Supreme Court has never held that the Due Process Clause guarantees the right of a defendant to have the jury instructed on a lesser-included offense in a non-capital case. Thus, Petitioner cannot show that the state court's rulings on the Jury Charge Claim were contrary to or unreasonably applied federal precedent. This deficiency alone precludes habeas relief on Ground One, for failure to meet § 2254(d)(1)'s standard of review. Nevertheless, the Court finds that the Jury Charge Claim also fails on the merits for other reasons.

First, the Appellate Division determined that the requested lesser-included offense charge was not supported by the evidence. (*See Rabaia II*, 2011 WL 309172, at *3 ("the evidence did not 'clearly indicate' that defendant's assault upon [N.D.] was completed before he took [N.D.]'s money".) Given Petitioner's version of the facts denying any assaultive conduct against N.D. (*see* ECF 17-26 at 88-89, 109-111 and 115-16), the jury could have found him guilty of theft, but not of simple assault. Petitioner had denied striking or even touching N.D. (*id.*), but Petitioner admitted to taking at least a portion of the victim's money to which he was not entitled. (*Id.*) If Petitioner's testimony were to be believed, there would have been a theft, not a robbery. The Appellate Division therefore

found that a simple assault charge did not jump off the page in this case. (*Rabaia II*, 2011 WL 309172, at *2-3.) Petitioner has not contradicted the state courts' findings on this point by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). His habeas suggestion that "the jury could have found that defendant assaulted [N.D.]" (ECF 11 at 20) flatly contradicts his own denial at trial of any assault against N.D. (ECF 17-26 at 88-89, 109-111 and 115-16.)

Second, § 2254 petitions alleging general improprieties during the state trial are not reviewable by habeas courts unless the error resulted in a fundamentally unfair proceeding and thus violated a petitioner's due process rights. *Estelle v. McGuire*, 502 U.S. 62, 72-73 (1991) (habeas review of jury instructions is limited to cases where the instructions violated a defendant's due process rights). Unless a constitutional violation occurs at trial, the claim is governed by state law and is not subject to re-examination in federal habeas proceedings. Consequently, petitions alleging specific errors in state law do not present federally redressable issues unless the violation is demonstrated to be of constitutional magnitude. *Pulley v. Harris*, 465 U.S. 37, 41 (1984). It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. Nor do federal courts' habeas powers permit reversal of convictions based on a belief

13

that a trial judge incorrectly interpreted a state evidentiary rule. The only question for a habeas court is "whether the [challenged evidentiary decision or instruction] by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72.

Petitioner has not made the requisite constitutional showing of fundamental unfairness here. Given Petitioner's denial of any assaultive conduct against N.D. (ECF 17-26 at 88-89, 109-111 and 115-16), a *sua sponte* instruction on simple assault would have been at odds with Petitioner's own position at trial. (ECF 17-26 at 109.) Thus, the trial court's failure to charge the jury on simple assault was not fundamentally unfair.

For these reasons, the Appellate Division's ruling on Petitioner's Jury Charge Claim was not contrary to, or an unreasonable application of, United States Supreme Court precedent. Petitioner has not identified any federal precedent under which the Appellate Division's affirmance of the trial court's failure to give a lesser included offense charge on simple assault was unconstitutional.

Ground One of the Fourth Petition is denied.


**B.    Ground Two: The Trial Court's Flight Charge Was Erroneous.**

In Ground Two, Petitioner argues that the trial court erred in its flight charge by: (1) giving the wrong alternative of the Model Charge on Flight; and (2) impermissibly expanding the given charge's scope to include "attempted flight." (ECF 11 at 22-29 (referred to as "Flight Charge Claim").)

At trial, Petitioner testified that he did not attempt to flee when he was detained by casino security officers. (*Rabaia II*, 2011 WL 309172, at *3; ECF 17-26 at 111.) On cross-examination, he testified that he "wasn't running" and "wasn't going to run away" from the crime scene. (*Rabaia II*, 2011 WL 309172, at *3; ECF 17-26 at 112.)

At the charge conference, defense counsel argued that the court should not instruct the jury on flight "at all" because Petitioner's position was "that there was no flight." (*Rabaia II*, 2011 WL 309172, at *3; ECF 17-27 at 7.) Counsel asked that if, however, the court decided to give such charge, Petitioner wanted it provided as set forth in the model flight charge. (*Id.*) Counsel did not request the version used when a defendant admits flight but offers an explanation for his departure. (*Rabaia II*, 2011 WL 309172, at *3.)

At trial, Judge Donio charged the jury as follows:

> Now there's been testimony and there's been evidence supplied to you on video from which you may infer the Defendant fled shortly after the alleged commission of the crime. The Defendant denies any flight or attempted

15

flight. The question of whether Defendant
attempted to flee after the commission of
the crime is another question of fact for
you. Mere departure from a place, where a
crime has been committed, does not
constitute flight. If you find, however,
that the Defendant, fearing an accusation or
arrest would be made against him on the
charge involved, took refuge in flight or
attempted [flight] for the purpose of
evading the accusation or arrest on the
charge, you may consider such flight in
connection with all the other evidence in
the case as an indication of proof of
consciousness of guilt. Flight may only be
considered as evidence of consciousness of
guilt if you should determine that the
Defendant's purpose in leaving or attempting
to leave was to evade accusation or arrest
for the offense charged in the Indictment.

(ECF 11 at 22; ECF 17-27 at 33-34 (the "Flight Charge").)

On direct appeal, Petitioner argued that Judge Donio erred
by: (1) failing to give the flight charge version that applies
where a defendant offers a flight explanation, and (2) including
attempted flight in the flight charge (collectively, "Direct
Appeal Flight Charge Claims"). (*Rabaia II*, 2011 WL 309172, at
*2.) The Appellate Division rejected Petitioner's challenge.
Explaining that any charge directing the jury to consider flight
explanation would have been inconsistent with Petitioner's
flight denial testimony, the Appellate Division ruled:

In light of [Petitioner's] testimony [that
he "wasn't running" and "wasn't going to run
away"], the trial court cannot be faulted
for accepting defense counsel's assertion
that it was defendant's position that he had

16

not fled the scene and he was not offering
any explanation for flight.

Furthermore, even if the court erred by
failing to interpret defendant's testimony
as providing an explanation for attempting
to flee the scene, the error does not rise
to the level of plain error, that is, an
error clearly capable of producing an unjust
result. [T]he judge's failure to provide the
jury with the alternative version of the
flight charge was not likely to affect the
outcome of the trial, particularly in view
of the overwhelming evidence of defendant's
guilt.

[Furthermore,] evidence of attempted flight
may be admitted in a criminal case. Thus,
the charge was appropriate in this case.

(*Rabaia II*, 2011 WL 309172, at *4 (internal citation omitted).)

The New Jersey Supreme Court denied certification on
September 9, 2011. (ECF 17-14.)

In his Fourth Petition, Petitioner merely re-alleges his
Direct Appeal Flight Charge Claims. (ECF 11 at 22-23 ("Habeas
Flight Charge Claims").)

Respondents contend that jury instruction questions decided
on state law grounds are not within federal courts' habeas
review, in the absence of a due process violation. They also
note that Petitioner has not cited any United States Supreme
Court precedent that would render the Flight Charge
constitutionally defective. (ECF 17 at 21-23.)

For the reasons set forth below, the Court agrees with
Respondents that Ground Two must be denied.

(1) *Jury Charge Regarding Explanation Of Flight*: First,

Petitioner contends that the trial judge "should have given the

alternative of the model flight charge that deals with

[Petitioner's] ... suggested explanation for his alleged

departure from the scene." (ECF 11 at 23 (referred to as "Flight

Explanation Claim").)[1] However, habeas claims such as this

alleging state law errors are not reviewable by federal habeas

courts unless petitioners demonstrate a fundamentally unfair

violation of their due process rights. *See Estelle*, 502 U.S. at

72-73; *Pulley*, 465 U.S. at 4. Petitioner here has not done so.

Under United States Supreme Court precedent, a jury may

properly consider a defendant's flight as one of the

circumstances when determining a defendant's guilt. *United*

*States v. Miles*, 468 F.2d 482, 489-90 (3d Cir. 1972) (evidence

of flight "has been consistently held admissible as

circumstantial evidence of guilt to be considered with the other

---

[1] Specifically, Petitioner contends that Judge Donio should have
given the following Model Charge on Flight: " ... The defense
has suggested the following explanation [for fleeing after the
crime]: (Set forth explanation suggested by defense). If you
find the defendant's explanation credible, you should not draw
any inference of the defendant's consciousness of guilt from the
defendant's departure. If, after consideration of all the
evidence, you find that the defendant, fearing that an
accusation or arrest would be made against (him/her) on the
charge involved in the indictment, took refuge in flight for the
purpose of evading the accusation or arrest, then you may
consider such flight in connection with all the other evidence
in the case, as an indication or proof of a consciousness of
guilt." (ECF 11 at 24.)

facts of the case") (citing *Allen v. United States*, 164 U.S.
492, 499 (1896)). Petitioner has not cited any United States
Supreme Court precedent that requires a flight instruction be
given in particular contexts or that mandates particular
language if and when circumstances warrant a flight charge.

In the instant case, the State's theory was that Petitioner
was "try[ing] to run away." During summations, the prosecutor
told the jury it had seen and heard "evidence [in] the
surveillance footage and testimony of Security Officer Grobosky
[that] the Defendant pushed him and tr[ied] to run away" when
casino security personnel arrived at the scene. (*Rabaia II*, 2011
WL 309172, at *4; ECF 17-27 at 23.) When charging the jury,
Judge Donio told jurors that they could only consider flight as
evidence of consciousness of guilt "if [they] determine[d] that
[Petitioner's] purpose in leaving or attempting to leave was to
evade accusation or arrest for the offense charged in the
Indictment." (ECF 17-27 at 34.) The trial court did *not* instruct
jurors that Petitioner's seeming flight, by itself, was
sufficient to find him guilty. *Cf*. *Hickory v. United States*, 160
U.S. 408, 422-23 (1896) (holding unconstitutional an instruction
that permitted jurors to infer consciousness of guilt from
flight alone).

The Fourth Petition claims that Judge Donio should have
given the Model Charge on Flight because Petitioner "did not

deny that [he] attempted to depart the scene [and] suggested an explanation for the attempted departure." (ECF 11 at 24.) That contention is *flatly at odds* with Petitioner's own testimony at trial that he "wasn't running." (*Rabaia II*, 2011 WL 309172, at *4; ECF 17-26 at 112.) In any event, Judge Donio *did* leave any purported flight explanation to the jury's role as factfinder. (*See* ECF 17-27 at 34.) The fact that Judge Donio did not expressly incorporate the language of the Model Charge's provision regarding a defendant's flight explanation appears insignificant. The result was the same. The jury knew it could consider Petitioner's purpose, if any, in leaving the scene. The Flight Charge was consistent with *Allen* and allowed jurors to consider both flight and explanation of flight.

The Appellate Division determined that "there [was] evidence supplied to [the jury] on video from which [jurors] [could] infer the Defendant fled shortly after the alleged commission of the crime." (*Rabaia II*, 2011 WL 309172, at *4.) Petitioner has not offered clear and convincing evidence contradicting that determination. *See Miller-El v. Cockrell*, 537 U.S. 322, 324 (2003) (citing 28 U.S.C. § 2254(e)(1)).) Thus, there is no basis for this Court to find the Flight Charge constitutionally defective. It was, in fact, consistent with United States Supreme Court precedent. *See Miles*, 468 F.2d at 489-90 (flight evidence is "admissible as circumstantial

evidence of guilt to be considered with the other facts")
(citing *Allen*).)

(2) *Jury Charge Regarding Attempted Flight*: Petitioner
contends that the trial judge "erred in expanding the scope of
the model jury charge to include 'attempted flight.'" (ECF 11 at
27 ("Attempted Flight Claim").) As noted *supra* regarding the
Flight Explanation Claim, federal habeas courts may not review
jury instruction challenges that were decided on state law
grounds, unless the instructions violated a defendant's due
process rights. Petitioner has not made that showing here with
respect to Ground Two's Attempted Flight Claim.

Evidence of attempted flight is admissible in New Jersey
criminal cases (*see Rabaia II*, 2011 WL 309172, at *4), and state
law allows juries to infer a consciousness of guilt from an
attempt to flee. (*Id.* (citing *State v. Mann*, 625 A.2d 1102,
1107-08 (N.J. 1993)). Consistent with state law, the Appellate
Division ruled that "the charge [allowing inference of
consciousness of guilt from an attempt to flee] was appropriate
in this case." (*Rabaia II*, 2011 WL 309172, at *4 (citing *Mann*,
625 A.2d at 1107-08).) The Fourth Petition endeavors to
criticize Judge Donio's attempted flight charge language by
arguing: "There is no case law to support inclusion of attempted
flight as a jury instruction." (ECF 11 at 28.) Petitioner's
argument misses the mark. To meet the habeas standard of review,

it is Petitioner's burden to demonstrate that the state court decisions were contrary to or inconsistent with federal precedent. He has not done so.

Nor has he shown that the "attempted flight" instruction was fundamentally unfair, thereby tainting his trial by depriving him of due process. That showing is indispensable in order for a habeas court to review a jury charge ruling decided on state law grounds. Petitioner has not made that showing. In finding the attempted flight charge "appropriate" (*Rabaia II*, 2011 WL 309172, at *4), the Appellate Division reasonably could have found that evidence at trial *did* suggest that Petitioner made an unsuccessful effort to flee. (*See*, *e.g.*, ECF 17-6 at 10-11 ("During this time of walking and talking [outside the casino restroom after the incident], defendant allegedly pushed [Security Officer] [John] Grobosky and, after a step or two, defendant fell to the ground ... [D]efendant and [N.D.] [were] detained separately in [the casino's] security offices").) An accused's flight from the scene need not be successful in order to give rise to an inference of consciousness of guilt; an unsuccessful attempt to flee logically gives rise to the same inference -- that the accused wanted to avoid accusation and arrest for what he had just perpetrated due to his own consciousness of guilt.

Petitioner has not cited any United States Supreme Court precedent that proscribes an attempted flight instruction in contexts analogous to his case. Moreover, Petitioner has not made any constitutional showing of fundamental unfairness to subject the Appellate Division's affirmance of Judge Donio to habeas court review.

For all of the foregoing reasons, Ground Two of the Fourth Petition is denied.

C.  **Ground Three: The Trial Court Erred, To Defendant's Prejudice, In Denying A Mistrial, Or Sufficient Inquiry Or Remediation, Concerning An Incident In Which The Defendant Evidently Was Seen By Jurors While In Handcuffs And Shackles.**

In Ground Three, Petitioner argues that the trial court abused its discretion in denying his request for a mistrial after, he alleges, prospective jurors saw him in shackles. (ECF 11 at 30-34 ("Mistrial Claim").) Petitioner alleges that he was "evidently seen by prospective jurors, during jury selection, some of whom ultimately sat on the jury that convicted [me], while [I] was held ... in handcuffs and shackles ... during an evacuation of the building." (ECF 11 at 30.) He concedes that he did "not raise[] [this issue] until after the verdict" (*id*. at 30), when he filed a request for mistrial. (ECF 17-6 at 50-52.)

In that May 15, 2008 motion for mistrial, Petitioner claimed that when a building-wide fire alarm sounded on the day of jury selection, he "was escorted to the sheriff bus behind

the court[.] [T]he bus sat in the parking lot for approximately
20 min[utes][.] [W]hen I was place[d] on the bus[,] I was seen
in handcuffs and shackles by all my potential jury members[,]
th[u]s tainting the minds of my jury that I was in the middle of
picking." (ECF 17-6 at 51 ("Mistrial Motion").)

On June 3, 2008, Judge Donio adjourned sentencing and held
an evidentiary hearing on the Mistrial Motion. (ECF 17-29.)
Judge Donio explained that, after receiving the Motion, the
court had "instructed the sheriff's department to take certain
photographs of the bus, A, with nobody in the bus, and B, then
with somebody in the bus." (*Id*. at 2.) Examining the photos at
the June 3 hearing, Judge Donio noted the "grids ... covering
all around the windows ... on the bus that makes it virtually
impossible to see in the bus." (*Id*. at 2 and 8.) At the hearing,
Sergeant Brian Fieni (*id*. at 4-5) and Officer Kenneth Johnson
(*id*. at 54) testified that: once inmates were placed on a
transport bus following the alarm, the bus waited in the rear
parking lot; sheriff's officers were positioned around the bus
during the fire alarm; county transport staff did not observe
any civilians or court staff near the bus during the fire alarm;
and only persons' silhouettes are visible to those standing more
than six feet outside the bus. (*Id*. at 9-10, 11-14, 58-60.)

After hearing witness testimony, receiving the bus
photographs, and reviewing the court floorplan and parking lot

diagrams (*id.* at 66), the court denied Petitioner's motion.

First, the court questioned Petitioner's seemingly strategic

election to postpone making a claim that prospective jurors saw

his restraints:

> [Defendant seems to suggest] some conspiracy
> to make a fire happen in the prosecutor's
> office to prejudice this defendant. What's
> ironic is that the Defendant didn't see fit
> to talk to his lawyer or anybody else about
> it when he had 20 peremptory challenges
> left. And if he did see any jurors looking
> into the bus, he had 20 peremptory
> challenges to take care of it or to mention
> it to the Court. But he chose to put that in
> his back pocket and see how the trial went
> and then figure he would have an ace card in
> his pocket if he was convicted to raise this
> issue; so I look at that as very suspect.

(ECF 17-29 at 75-76.) Then, Judge Donio turned to the

questionable veracity of Petitioner's claim:

> In the seven years I've been here, I've
> never seen a yellow bus transport prisoners
> to or from the courthouse. [T]here's a van
> that's white, and the bus that we saw
> pictures of. So this yellow bus is a
> fragment of the Defendant's imagination.

(*Id.* at 76.) Thirdly, Judge Donio noted the practical

implications of Petitioner's version of events:

> For any juror, first of all, to be back
> there [behind the court building near the
> jail], and to then see through these grids
> and recognize this defendant would take the
> reflexes of Alan Iverson and it would take
> the eyes of Superman because when the bus
> would come out and turn, that would probably
> be a matter of two to three seconds. So for
> a juror (a) to look at the bus, (b) say

there's prisoners on the bus, (c) look
through the grids with their Superman vision
and (d) to do all that in two or three
seconds with the quickness of Alan Iverson
would take a Herculean task for any-layman
to do; so that speaks for itself.

There is no question in [my] mind, one, you
cannot see in that vehicle; two, the vehicle
never pulled near any area where any court
personnel or juror would have been anywhere
near ... and by the way, on the corner
there, there's a huge yellow generator and
there's shrubbery all around it ... that
hinders your view. And again, if you were in
Lot A, then those Superman vision abilities
have to come in play to seeing through
buildings and moving sound and to see
through generators and shrubbery ... I mean,
the more you look at this, the more
ridiculous this argument becomes.

(*Id*. at 77-78.) Based on all of these considerations, Judge

Donio rejected Petitioner's claim:

What we have here is a ... compulsive story
teller. The Court took the pains to go
through all of this, call the witnesses, do
everything to give due process to this
argument that is nothing more than an
absolute fantasy.

(ECF 17-29 at 76-78.)

On Petitioner's direct appeal, the Appellate Division

affirmed Judge Donio's "determin[ation] that there was no basis

to declare a mistrial." (*Rabaia II*, 2011 WL 309172, at *5

(ruling that Judge Donio's "factual findings are binding on

appeal because they are supported by sufficient credible

evidence in the record").)

On May 12, 2015, the New Jersey Supreme Court denied certification. (ECF 17-21.)

Respondents argue that Judge Donio properly exercised his discretion in denying the Mistrial Motion. They state that evidence demonstrated prospective jurors and the inmate transport bus -- with its mesh-covered windows -- waited in entirely separate areas during the fire drill, rendering it practically impossible to see each other. (ECF 17 at 24-32.)

For the reasons set forth below, the Court agrees with Respondents that Ground Three must be denied.

A criminal defendant has a constitutional right to appear before a jury free of visible restraints. *Deck v. Missouri,* 544 U.S. 622, 626-29 (2005). Visible shackling of a criminal defendant during trial "undermines the presumption of innocence and the related fairness of the factfinding process" and "affront[s] the dignity and decorum of judicial proceedings that the judge is seeking to uphold." *Deck,* 544 U.S. at 630-31 (quoting *Illinois v. Allen,* 397 U.S. 337, 344 (1970)). As such, the use of visible restraints is prohibited "absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." *Deck,* 544 U.S. at 629.

With respect to allegedly unconstitutional restraints at trial, a habeas petitioner is only entitled to relief where the

error had "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993). The Third Circuit has "long held that a brief, unintended glimpse of a defendant in handcuffs is not inherently prejudicial and does not require a mistrial without an affirmative showing of actual prejudice." *United States v. Roane*, 338 F. App'x 127, 130 (3d Cir. 2009) (citing *United States v. Chrzanowski*, 502 F.2d 573, 576 (3d Cir. 1974) ("The fact that a jury may briefly see a defendant in handcuffs is not so inherently prejudicial as to require a mistrial").)

Petitioner has not identified any United States Supreme Court precedent setting forth a bright-line rule that the visibility of inmate restraints, whether via a jury's actual or alleged sighting of them, constitutes grounds for a mistrial.

Instead, Petitioner suggests that prospective jurors may have had, at most, an accidental opportunity to view his restraints during the fire alarm evacuation. However, he has not demonstrated in the first instance that such event occurred. In his Mistrial Motion, Petitioner made only unsupported suppositions that he "was seen in handcuffs and shackles by all my potential jury members." (ECF 17-6 at 51.) His Fourth Petition does not remedy that glaring deficit.

Under the circumstances, even if Petitioner's restraints were momentarily visible, a brief view of restraints is not so

inherently prejudicial as to require a mistrial -- particularly given the strong evidence of Petitioner's guilt. (*See*, *e.g.*, ECF 17-6 at 55-56 (Petitioner's offense against N.D. was caught on videotape)). *United States v. Fredericks*, 684 F. App'x 149, 164-65 (3d Cir. 2017) ("At issue in this case is whether a brief, inadvertent observation of a defendant in handcuffs offends a defendant's constitutional rights ... 'Because a jury's brief or inadvertent glimpse of a defendant in physical restraints is not inherently or presumptively prejudicial to a defendant, [defendant] must demonstrate actual prejudice to establish a constitutional violation. [Defendant] did not examine the jury and has adduced no other evidence probative of prejudice. He has failed to establish actual prejudice'") (internal citations omitted).

Petitioner's contentions, even if believed for the sake of argument, suggest that the fire alarm evacuation theoretically *might* have provided, at *most*, a spatially and temporally limited opportunity for prospective jurors to see his restraints. The evidence, however, strongly shows that did *not* occur to any degree. The trial court found, after an evidentiary hearing, that Petitioner's allegation of prospective jurors' sighting of his restraints was physically impossible because the prospective jurors and the Petitioner were evacuated to opposite sides of the courthouse and Petitioner was placed into a bus that cannot

readily be seen into to discern any individual inside. The Appellate Division determined that this factual finding was "supported by sufficient credible evidence." (*Rabaia II*, 2011 WL 309172, at *5.) Petitioner has not contradicted the state courts' factual findings by clear and convincing evidence. *See Miller-El*, 537 U.S. at 324 (citing 28 U.S.C. § 2254(e)(1)).

Furthermore, Petitioner has made no showing that this supposed circumstance was inherently prejudicial to his trial. Rather, he merely suggests -- but does not demonstrate -- "*potential* for prejudice from his possible encounter with jurors." (ECF 11 at 34.)

Petitioner does not demonstrate that the trial court's factual finding that prospective jurors had no opportunity to observe Petitioner in restraints during the fire drill was clearly erroneous as shown by clear and convincing evidence, and further, Petitioner offers no basis for this Court to find that the Appellate Division's affirmance of Judge Donio's Mistrial Motion ruling was contrary to, or an unreasonable application of clearly established federal law. For all of the foregoing reasons, Ground Three of the Fourth Petition is denied.

**D. Ground Four: The Fifteen-Year Extended Term Sentence Was Excessive And Appears To Have Been Improperly Based On The Trial Judge's Personal Opinions Of Defendant's Personality, Lifestyle, And Conduct.**

In Ground Four, Petitioner alleges that his extended term sentence is improper. (ECF 11 at 35-42 ("Sentencing Claim").) He argues that "the harsh sentence" he received "was not based on a proper weighing of the aggravating and mitigating factors. Rather, it was based on the fact that the defendant testified at trial [and] filed a pre-sentencing motion for a new trial, along with the judge's general dislike for defendant." (*Id.* at 39.)

On June 3, 2008, the trial court sentenced Petitioner to a discretionary extended term of fifteen years' imprisonment on his second degree robbery conviction, ruling that the statutory requirements were met for imposition of an extended term under N.J. Stat. Ann. § 2C:44-3(a). Based on Petitioner's prior convictions as a persistent offender, the court ordered that Petitioner serve eighty-five percent of that sentence, pursuant to NERA. Specifically, the court found aggravating factors three (risk of committing another offense[2]), six (extent of prior criminal record[3]), nine (need for deterrence[4]), and twelve (offense against a person Petitioner knew or should have known was sixty years or older or disabled[5]). The court additionally found mitigating factors four (substantial grounds to excuse or

---

[2] N.J. Stat. Ann. § 2C: 44-1(a)(3).
[3] N.J. Stat. Ann. § 2C:44-1(a)(6).
[4] N.J. Stat. Ann. § 2C:44-l(a)(9).
[5] N.J. Stat. Ann. § 2C:44-l(a)(l2).

justify conduct, although not establishing a defense[6]) and eleven
(imprisonment will entail excessive hardship to dependents[7]). The
court determined that the aggravating factors substantially
outweighed the mitigating factors, to which it assigned limited
weight. (ECF 17-6 at 55-62; ECF 17-29 at 79-84.)

On direct appeal, Petitioner challenged the length of his
sentence. (ECF 17-6 at 34-41; *Rabaia* II, 2011 WL 309172, at *5.)
The Appellate Division found "no merit" in Petitioner's
arguments. (*Rabaia II*, 2011 WL 309172, at *5.) The court was
"satisfied that the sentence is not manifestly excessive or
unduly punitive, does not represent an abuse of the judge's
sentencing discretion, and does not shock the judicial
conscience." (*Id.* (internal citations omitted).) The New Jersey
Supreme Court denied certification. (ECF 17-14.)

Respondents contend that Ground Four does "not involve
federal law but instead challenge[s] an interpretation and
application of state law." (ECF 17 at 35.) They also argue that
Petitioner's sentence "was within statutory limits." (*Id.*)

For the reasons set forth below, the Court agrees with
Respondents that Ground Four must be denied.

*Excessive Sentence Claim:*  A federal court's ability to
review state sentences is limited to challenges based upon

---

[6] N.J. Stat. Ann. §2C:44-1(b)(4).
[7] N.J. Stat. Ann. § 2C:44-1(b)(11).

"proscribed federal grounds such as being cruel and unusual,
racially or ethnically motivated, or enhanced by indigencies."
*See Grecco v. O'Lone,* 661, F. Supp. 408, 415 (D.N.J. 1987)
(citation omitted). Thus, a challenge to a state court's
discretion at sentencing is not reviewable in a federal habeas
proceeding unless it violates a separate federal constitutional
limitation. *Butrim v. D'Ilio*, No. 14-4628, 2018 WL 1522706, at
*16 (D.N.J. Mar. 28, 2018) (citing *Pringle v. Court of Common
Pleas,* 744 F.2d 297, 300 (3d Cir. 1984)). *See also* 28 U.S.C. §
2254(a); *Estelle,* 502 U.S. at 67; *Lewis v. Jeffers,* 497 U.S.
764, 780 (1990).

   "The Eighth Amendment, which forbids cruel and unusual
punishments, contains a 'narrow proportionality principle' that
'applies to noncapital sentences.'" *Ewing v. California,* 538
U.S. 11, 20 (2003) (citations omitted). The Eighth Amendment
does not require strict proportionality between crime and
sentence. Rather, it forbids only extreme sentences that are
"'grossly disproportionate' to the crime." *Harmelin v. Michigan*,
501 U.S. 957, 1001 (1991)(Kennedy, J., concurring in part and
concurring in judgment) (citation omitted) (*quoted with approval
in Ewing v. California,* 538 U.S. 11, 23 (2003)). *See also Solem
v. Helm,* 463 U.S. 277, 292 (1983).

   In this case, New Jersey courts reviewed Petitioner's
sentence and found no error. However, any sentencing error that

may have occurred is a matter of state law. His sentence was,
though, within New Jersey law. *See* N.J. Stat. Ann. §§ 2C:15-
1(a)(1), 2C:43-6, 2C:43-7.2, 2C:44-3(a).

Furthermore, his claim of a "harsh" sentence (ECF 11 at 39)
does not raise an Eighth Amendment claim to warrant departure
from that habeas principle. Absent colorable allegations that
his sentence constitutes cruel and unusual punishment prohibited
by the Eighth Amendment, or that it is arbitrary or otherwise in
violation of due process, the legality and length of his
sentence are questions of state law. Under § 2254, this Court
has no jurisdiction over such questions. *See Chapman v. United
States,* 500 U.S. 453, 465 (1991) (holding that under federal
law, "the court may impose ... whatever punishment is authorized
by statute for [an] offense, so long as that penalty is not
cruel and unusual, and so long as the penalty is not based on an
arbitrary distinction that would violate the Due Process Clause
of the Fifth Amendment"); *see also Harmelin,* 501 U.S. at 994-95;
*Wainwright v. Goode,* 464 U.S. 78 (1983). Petitioner's arguments
in support of Ground Four amount merely to his personal opinions
about himself and the sentence he received. (*See*, *e.g.*, ECF 11
at 37 and 39 (claiming that Petitioner's "record does not
demonstrate a need for an extended term" and "[s]urely an
ordinary term would sufficiently punish the defendant for the
crime he committed and adequately deter future crimes"). These

opinions do not offer evidence demonstrating a level of disproportionality that violates the Eighth Amendment.

*Improper Bias Claim*: Petitioner's contention that Judge Donio based his extended term sentencing decision on "general dislike for defendant" (ECF 11 at 39) is contradicted by the record. In his Statement of Reasons for Petitioner's extended term sentence, Judge Donio explained:

> Defendant preyed upon an elderly victim in a casino. He stalked him, followed him into a casino bathroom, and robbed him ... [A]ll or most of this was caught on videotape ... There is a need to protect not only the public but the elderly individuals in our society from this Defendant ...
>
> The Defendant's history reveals 9 arrests with 5 prior convictions, 3 of which were indictable ... [H]e is listed in the Domestic Violence Registry for matters involving his ex-girlfriend ...
>
> The Defendant seems to be an individual who likes to swindle, cheat, and steal money to support his gambling habits ... [T]his robbery took place against an elderly victim who was unable to defend himself[,] over age 60, had Parkinson's Disease, and when he testified appeared physically weak and infirm ...
>
> In considering the whole person and the fact that this Defendant has an admitted gambling addiction and steals and robs for money, and is now preying upon elderly victims with physical infirmities, a sentence appropriate for this type of offense is in order ... Defendant must be deterred and he is a threat to others.

(ECF 17-6 at 55-57 and 60; ECF 17-29 at 79-83 ("[T]he seriousness of his offenses have escalated from mere thefts and swindling and cheating to second degree robbery").)

Contrary to Petitioner's contention (ECF 11 at 41), the sentencing court weighed aggravating and mitigating factors, including Petitioner's "propensity to further dangerousness and his persistent criminal conduct." (ECF 17-29 at 83.) Petitioner relies on generalities such as alleged partiality by the sentencing court (ECF 11 at 42), but this does not suffice for habeas relief. Judge Donio's remarks about Petitioner were at all times temperate and derived from the records before him including evidence at trial. Petitioner has not shown that his sentence is grossly disproportionate to his offense or that the state courts' sentencing-related decisions were inconsistent with federal precedent.

In short, Petitioner has failed to establish that his sentence violates the federal Constitution. The New Jersey courts' adjudication of his Sentencing Claim was not contrary to, or an unreasonable application of, clearly established federal precedent. As the Sentencing Issue raised by Petitioner is a matter of state law, and because the Court finds no federal constitutional violation, Ground Four is denied.

## V. <u>Certificate of Appealability</u>

Pursuant to 28 U.S.C. § 2253(c), Petitioner may not appeal from a final order in this habeas proceeding where Petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "A [habeas petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

For the reasons expressed above, Petitioner has failed to make a substantial showing that he was denied a constitutional right. As jurists of reason could not disagree with this Court's resolution of the petition, the Court shall deny Petitioner a certificate of appealability.

## VI. <u>CONCLUSION</u>

For the reasons stated above, the Fourth Petition is denied. A certificate of appealability shall not issue.

An accompanying Order will be entered.


**February 19, 2019**                    **s/ Jerome B. Simandle**
Date                                      JEROME B. SIMANDLE
                                          U.S. District Judge